UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA,<br>    Plaintiff,<br>       v.<br>JEREMY WHITE,<br>    Defendant. | Case No. 14-cr-00020-WHO-1<br><br>**ORDER DENYING MOTIONS FOR A JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL**<br><br>Re: Dkt. Nos. 112, 113 |

## INTRODUCTION

A jury found defendant Jeremy White guilty of possession with intent to distribute of at least 50 grams of methamphetamine as well as the lesser included offense of possession of methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and 18 U.S.C. § 2.  Docket No. 110 [Verdict].  White moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) because of insufficient evidence.  I must view the evidence in the light most favorable to the prosecution, and in that light there was ample evidence to convict.  White also moves for a new trial under Federal Rule of Criminal Procedure 33 because the government failed to test the small amount of methamphetamine found on his person and the report concerning what was tested was misleading.  No miscarriage of justice occurred – the defense could have tested whatever it wanted, and the verdict was not in the least impacted by the failure to test.  Accordingly, I DENY both motions.

## BACKGROUND

Around midnight on October 12, 2013, White was behind the wheel of his car when it was pulled over by a Sonoma County Deputy Sheriff for traffic violations.  Upon questioning by the Deputy Sheriff, White admitted to being on parole.  When the Deputy searched White, he found a small bag of methamphetamine in White's waistband.  White remarked, "[N]ow I'm going to

jail." The Deputy then searched the vehicle and found a large amount of methamphetamine in a paper bag stored in the engine compartment under the hood of White's car. There were two passengers in the car, Floyd Self and White's wife, Angela White, who had driven White's car to Santa Rosa earlier in the day to pick up White. White and his two passengers denied knowledge of the methamphetamine found in the engine compartment.

At trial, the government based White's knowledge and possession of the large amount of methamphetamine primarily on the facts that White was driving his own car, that the drugs were found in an obscure area of the engine compartment, and that the testimony from DEA Special Agent David Mateer indicated that drug operators would not use an unknowing "blind mule" to transport such a large quantity of drugs. Special Agent Mateer also testified that such a large quantity of methamphetamine is very unlikely to be consumed through an individual's personal use. Defendant did not put on any witnesses, but in argument and cross examination laid out the theory that the methamphetamine found under the hood of White's car was Floyd Self's and that Self (who had a prior conviction for drug possession with intent to distribute) had the opportunity to place the drugs in the car when he and Angela White drove defendant's car to Santa Rosa to pick him up on the day of the arrest.

On January 8, 2015, the jury returned their verdict, finding defendant guilty.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 29(c), a defendant may move for a judgment of acquittal, or renew such a motion, after a guilty verdict or after the court discharges the jury. When reviewing a defendant's motion for acquittal based on insufficiency of the evidence at trial, the court is "obliged to construe the evidence 'in the light most favorable to the prosecution,' and only then determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Only after we have construed all the evidence at trial in favor of the prosecution do we take the second step, and determine whether the evidence at trial, including any evidence of innocence, could allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. . . At this second step, we

2

must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Id*. at 1164-65 (internal citations omitted). "More than a 'mere modicum' of evidence is required to support a verdict." *Id*. at 1164.

Under Federal Rule of Criminal Procedure 33, upon defendant's motion a court "may vacate any judgment and grant a new trial if the interests of justice so require." Fed. R. Crim. P. 33(a). A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id*. The question the court must determine is, "despite the abstract sufficiency of the evidence to sustain the verdict, [whether] the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980); *see also United States v. Kellington*, 217 F.3d at 1097 (adopting the rationale from *Lincoln*). As the Ninth Circuit has explained, the "authority" to grant a motion for a new trial "should be exercised sparingly and with caution." *Lincoln*, 630 F.2d at 1319.

**DISCUSSION**

**I. MOTION FOR ACQUITTAL**

Defendant moves for a judgment of acquittal, arguing that there was insufficient evidence to support the charge that he knowingly possessed the cocaine found under the hood of his car or aided and abetted Self or Angela White (the other occupants of the car) in the crime of possession with intent to distribute over 50 grams of methamphetamine.

**A. Direct Liability for Knowing Possession**

At trial, the government was required to prove beyond a reasonable doubt that White knowingly possessed methamphetamine and that he possessed it with the intent to deliver to another person. Jury Instructions [Docket No. 101] at 14. As the Ninth Circuit recently reaffirmed, "mere proximity to contraband, or association with a person having possession of such contraband, is insufficient standing alone to support a finding of possession of that contraband."

3

*United States v. Nevils*, 598 F.3d at 1167. White argues that there was no direct evidence (*e.g.,* eye witnesses, fingerprints on the drugs) tying him to the drugs found under the hood of his car, and that all that was left was White's "mere proximity" to the drugs under the hood.

There was more than mere proximity in this case. The circumstantial evidence linking White to the drugs includes that: White was driving the car when the drugs were found; it was his car; the drugs were found in the engine compartment (which can be opened by the driver, as opposed to the passengers) and not in a location where the passengers could exercise control over the drugs; testimony from government witnesses indicated that drug operators would not use a "blind mule" or unknowing carrier to transport drugs of that value and purity (more than $20,000 of 99% pure methamphetamine); and defendant told the arresting officer, "[N]ow I am going to jail."[1]

Defendant points out that in the majority of the cases relied on by the government to support the verdict, the defendants were the sole occupants and drivers of the vehicles where drugs were found, supporting a reasonable inference that the drivers had dominion and control over the drugs. *See, e.g., United States v. Davila-Escovedo*, 36 F.3d 840, 843 (9th Cir. 1994) ("a jury may infer that the driver and sole occupant of a vehicle containing drugs was aware that the drugs were in the vehicle."); *United States v. Haro-Portillo*, 531 F.2d 962, 963 (9th Cir. 1976) ("the driver exercises dominion and control over his vehicle and its contents from which knowing possession of the contraband it contains may be inferred."); *United States v. Castro*, 972 F.2d 1107, 1111 (9th Cir. 1992) (possession of drugs could be reasonable inferred where defendant was observed driving heavily loaded vehicles into a warehouse and drugs were later seized from those vehicles or trailers); *United States v. De Jesus-Viera*, 655 F.3d 52, 59 (1st Cir. 2011) ("The jury could have

---

[1] While White repeatedly criticizes the government for its reliance on this statement as evidence supporting the conviction, that criticism is not well-placed. At trial, White argued that his statement was made directly after the small amount of drugs was found in his waistband and referred only to that small amount of drugs, not the as-yet undiscovered large amount of methamphetamine under the hood. The government argued that the statement more reasonably showed White's belief that he now expected a more in-depth search would occur that would turn up the large stash of drugs and White would be going back to jail. The jury was able to fully consider both sides' arguments. Construing the evidence in the light most favorable to the prosecution, a rational juror could have accepted the government's argument.

inferred that De Jesús-Viera acted knowingly and intentionally from testimony that the drugs were found in a car that De Jesús-Viera both owned and was driving, notwithstanding the fact the drugs were concealed in a hidden compartment.").[2]

In this case, White emphasizes the presence of two other passengers – Self and Angela White – who had control over the car at some point earlier in the day when they drove it down to Santa Rosa. While those facts are important, they do not undermine the jury's verdict. Evidence that White was driving the car when the drugs were found is significant, as is that it was White's own car, and that the drugs were hidden in the engine compartment – placing the drugs within the control of White and out of the control of the passengers. *See, e.g., United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994) (the fact that the trap doors could be opened with pins inserted in driver's visor, indicated driver's control over the drugs).

There are significant similarities between this case and *United States v. Quintero-Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995). There, the defendant was driving a borrowed car that was found to contain over 10 pounds of drugs. The court found sufficient evidence of knowing possession because "knowledge may be reasonably inferred where the defendant drives a car 'laden' with illegal substances" (*id*. at 1351), the defendant was the driver, and according to the defendant the passenger in the car lacked any connection to the car or its contents. "Thus, it could be reasonably inferred that Appellant knowingly exercised, in effect, exclusive dominion or control over the methamphetamine." *Id*. at 1352. While the passenger in *Quintero-Barraza* had no connection to the car (having allegedly just met the defendant) and here the passengers had control over the car at some point during the day, the significant factor is that the defendant was exercising dominion and control over both his car and the drugs under the hood at the time the drugs were discovered.

---

[2] In a number of the sole occupant cases, the defendants protested that the vehicles were not theirs. *See, e.g., United States v. Davila-Escovedo*, 36 F.3d at 842 (defendant borrowed the truck, but purchased a user fee decal for it); *United States v. Haro-Portillo*, 531 F.2d at 963 (defendant was employed as a chauffeur); *see also United States v. Quintero-Barraza*, 78 F.3d 1344, 1347 (9th Cir. 1995) (defendant with passenger, testified he borrowed the car for vacation purposes); *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994) (defendant was driving nephew's car with nephew as passenger). Here the vehicle containing the drugs was the defendant's own car.

In *United States v. Ojeda*, 23 F.3d 1473 (8th Cir. 1994), the defendant was driving his nephew's car with his nephew as a passenger. Defendant claimed the drugs hidden in a trap-door compartment were not his, but the facts that he was driving car, the trap door was activated by pins placed in the driver's-side visor, there was a strong scent of pine-sol in the car (which is used to mask drug odor), defendant's finger prints were found on two of the drug packages (defendant claimed he was told to ignore the packages by his nephew and claimed he didn't know their contents), and defendant made unsubstantiated statements about the purpose of the trip, created sufficient evidence to infer defendant's knowing possession of the drugs. *Id*. at 1476. Again, many of the persuasive facts in *Ojeda* are present here, including the driver's dominion and control over the car and control over the hidden drugs at the time of the stop. The additional significant piece of evidence here is White's statement that, after the small amount of drugs was found in his waistband, he was going to jail. That statement, when viewed in the light most favorable to the prosecution, supports a rational inference that White expected the large stash of drugs under the hood would be found.

Both sides rely on *Delgado Arellanes v. United States*, 302 F.2d 603, 605 (9th Cir. 1962). In that case, the defendants – a husband and wife – challenged their convictions for knowing possession of drugs found in the car the husband was driving and the wife was a passenger in. The Ninth Circuit explained that "[p]roof of exclusive control or dominion over property on which contraband narcotics are found is a strong circumstance tending to prove knowledge of the presence of such narcotics and control thereof," and found that there was insufficient evidence of the wife's control over the drugs to support her conviction. *Id*. at 606. The court reached this conclusion "because the presence of the narcotics is also exactly coincidental with the presence of her husband, and Mrs. Arellanes' presence with both is as fully explained by her attachment to her husband as it might be by a control over the drugs. These facts might indeed be said to establish that part of the charge related to facilitation of transportation, but they cannot show the possession or control which the government must establish to raise the presumption of guilty knowledge." *Id*. White argues that because he had relinquished control over his car to Self and Angela White earlier in the day, he did not exercise sufficient dominion and control over it and, like Mrs.

Arellanes, the facts at most show his role in transporting the drugs but not possession.

However, the Ninth Circuit's discussion of the sufficiency of the evidence against the husband and driver of the car in *Arellanes* undermines White's argument. As the Ninth Circuit explained: "in every instance" Mr. Arellanes was shown to have had "direction and control" of the car. "According to his own testimony, he loaned out the car for a fairly extended period on his own authority while he and his family were in Los Angeles. During that period he rented and operated another car. During the trip from Los Angeles to San Francisco he operated the vehicle and was in control of it when it appeared at the Page Street flat. Thus, Mr. Arellanes is shown to have been in exclusive control and dominion of the vehicle throughout the relevant period." *Id*. at 607. That the husband had relinquished control over the car at some point was not relevant when "at the time" the drugs were discovered he was driving and had exclusive control and dominion over the car. The same is here. While White asserts that "relevant time" is the whole day, the more relevant time is when White was pulled over and the drugs were discovered.

White also relies on *United States v. Ramirez*, 176 F.3d 1179, 1181 (9th Cir. 1999). In that case, the passenger – who was neither a driver nor on the rental contract – was charged with possession of drugs found in a rental car. The government witnesses testified that the passenger's nervousness was part of the reason a secondary search of the vehicle occurred. In overturning the passenger's conviction, the Ninth Circuit concluded that "mere knowledge of the presence of contraband, without evidence suggesting a passenger's dominion or control of the contraband, is insufficient to prove possession." *Id*. The critical facts in *Ramirez* – that the defendant was a mere passenger who was not on the rental car contract and there was no other evidence connecting him with the drugs – are different from those in this case, where the drugs were found in White's car while he was driving and had control over the car and thus the drugs in the engine compartment.

Finally, the large amount of drugs found in the car (over $20,000 worth) itself can establish a defendant's "knowing possession" of the drugs. *See, e.g.*, *United States v. Quintero-Barraza*, 78 F.3d at 1352 ("the fact that the vehicle contained approximately ten pounds of the drug with a street value approximating $100,000.00 is also sufficient to support any inference of knowing

7

possession."); *United States v. Castro*, 972 F.2d at 1111 ("Nor can Castro seriously claim not to have known about the cocaine. Government experts testified that that amount of cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe. Based on that testimony the jury reasonably could have found that Castro knowingly possessed the cocaine."); *United States v. De Jesus-Viera*, 655 F.3d at 60 ("The jury also could have inferred that De Jesús-Viera knew of the presence of the illegal narcotics in his car from the sheer amount of drugs the CBP officers found."); *see also United States v. Barbosa*, 906 F.2d 1366, 1368 (9th Cir. 1990) ("mere possession of a substantial quantity of narcotics is sufficient to support an inference that a defendant knowingly possessed the narcotics."). As the testimony at trial established, drug operators would not relinquish control over $20,000 of exceptionally pure methamphetamine to an unknowing courier or to a place that would be outside of their control. Even though Self – the person White argued was responsible for the drugs – was still in the car when the car was pulled over, Self was no longer driving and did not have direct access to or control over those drugs. White did.

Viewing the evidence in the light most favorable to the prosecution, it could allow a rational trier of fact to find the essential elements of knowing possession beyond a reasonable doubt.

### B. Intent to Distribute

White argues, in the alternative, that there was insufficient evidence to demonstrate intent to distribute even if there is sufficient evidence to establish knowing possession. White rests this argument on the fact that there was no evidence at trial that White had any involvement in drug sales or trafficking. He also attacks Agent Mateer's testimony that the quantity of drugs at issue were far in excess for personal use and instead supported a conclusion that the drugs were intended for distribution as too generalized to provide sufficient evidence for the second element of the charged offense. However, there is ample case law – that White did not attempt to distinguish in his Reply – holding that intent to distribute can be inferred simply from possession of a significant amount of drugs. *See, e.g., United States v. Davila-Escovedo*, 36 F.3d 840, 843 (9th Cir. 1994) ("A jury may infer intent to distribute from the quantity and value of the drug

possessed."); *United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994) (same).[3]

Viewing the evidence in the light most favorable to the prosecution, it could allow a rational trier of fact to find the essential elements of intent to distribute beyond a reasonable doubt.

### C. Vicarious Liability; Aiding and Abetting

At trial, the jury was instructed that:

> A defendant may be found guilty of possessing with intent to distribute methamphetamine, even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To prove a defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt:
> First, the crime of possessing with intent to distribute methamphetamine was committed by someone;
> Second, the defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of that crime;
> Third, the defendant acted with the intent to facilitate that crime; and
> Fourth, the defendant acted before the crime was completed.
> . . . .

Jury Instructions [Docket No. 101] at 20.

White argues that there is insufficient evidence to support a conviction based on aiding and abetting because there was insufficient evidence that White "acted with intent to facilitate that crime" of possession with intent to distribute. Mot. at 11. At most, White argues, the evidence establishes only an intent to facilitate the transportation of the methamphetamine.

As an initial matter, I need not reach this argument because I have concluded that there was sufficient evidence to support direct liability. However, even if I considered it on the merits, I would find that there was sufficient evidence to support a conviction based on aiding and abetting in light of the following evidence: White was driving the car when the drugs were found; it was his car; the drugs were found in the engine compartment that can be opened by the driver (as opposed to in the passenger compartment or somewhere else whether the passengers could have control over the drugs); testimony from government witnesses indicated that drug operators would

---

[3] The only case relied on by defendant is *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009), a habeas case where the court concluded that the expert's generalized testimony on gang activity was insufficient to show intent to support a gang activity enhancement. That case is wholly inapposite.

1   not use a "blind mule" or unknowing carrier to transport drugs of that value and purity (more than

2   $20,000 of 99% pure methamphetamine); and, Agent Mateer testified that the drugs at issue far

3   exceeded a personal use amount.

4   This evidence distinguishes this case from the one relied on by White, *Juan H. v. Allen*,

5   408 F.3d 1262 (9th Cir. 2005). In that case, there was no evidence that *Juan H*. knew, specifically

6   intended and affirmatively acted in support of a co-defendant's premeditated murders. *Id*. at 1276.

7   Here, White's direct and physical control over the drugs at the time of the traffic stop, as well as

8   the testimony that drug operators would not allow a "blind mule" to exercise that sort of control, is

9   circumstantial evidence sufficient to support the aiding and abetting charge here.[4] Similarly, the

10  defense's reliance on a Fourth Circuit conspiracy case addressing the liability of crew members for

11  not only transporting drugs by ship but also for distribution of the drugs after the crew offloaded

12  them is unhelpful. In *United States v. Manbeck*, 744 F.2d 360 (4th Cir. 1984), the Fourth Circuit

13  overturned conspiracy to possess marijuana with intent to distribute charges against the crew

14  members because there, there wasn't any evidence "from which an inference can be drawn as to

15  the general criminal intent and specific intent to distribute on the part of a particular crew

16  member." *Id*. at 390.[5] Here, the evidence of White's direct control over the methamphetamine

17  provides the link missing in *Manbeck*.

18  Viewing the evidence in the light most favorable to the prosecution, it could allow a

19  rational trier of fact to find the essential elements of aiding and abetting possession with intent to

20  distribute beyond a reasonable doubt.

21  White's motion for a judgment of acquittal is DENIED.

22  **II. MOTION FOR A NEW TRIAL**

23  White argues that a new trial must be granted because he was denied the opportunity to

24  meaningfully prepare his defense as the government did not provide all of the methamphetamine

---

[4] This would be a different case if the drugs were in the passenger compartment under the control of Self, or in a bag in the trunk which belonged to Self. *But see Arellanes*, 302 F.2d at 606 (noting in passing that evidence against wife who was passenger in car containing drugs driven by her husband was at most guilty of knowing transportation in light of her statements made upon arrest).
[5] The conspiracy to import marijuana charges were upheld. *Id*. at 386-87.

United States District Court
Northern District of California

at issue in this case to the defense for testing. White's argument boils down to the following: the DEA "Report of Drug Property Collected, Purchased, or Seized" showed that Exhibit 1B1 (tested by the government) was 1.4 grams of methamphetamine and Exhibit 1B2 (also tested by the government) was 244.9 grams (0.534 pounds). Declaration of Daniel P. Blank, Attachment 2. These amounts correlated to the amount of methamphetamine the arresting Sheriff Deputy noted in his report; the small amount of methamphetamine seized from White's waistband at approximately 1.4 grams and the large amount seized from the engine compartment at approximately 0.5 pounds. The defense argues that they reasonably assumed – based on the correlation of these numbers – that the government tested both the waistband drugs and the larger amount of engine compartment drugs. The defense, therefore, only asked for production of the drugs that the government had tested in order to conduct its own tests. Blank Decl., ¶ 3. The defense argues that it was not until trial that the defense realized that the government had only tested the larger amount of methamphetamine found in the engine compartment, and had not in fact tested the small waistband amount.

Based on these facts and assumptions, the defense contends that a new trial must be granted because had the defense tested the waistband amount, the defense could have argued "more persuasively" that waistband amount of methamphetamine was chemically distinct from the larger amount found in the engine compartment, undermining the government's theory that White must have knowingly possessed the drugs in the engine compartment. Mot. at 2-3.

The interests of justice do not require a new trial. As an initial matter, the defense misread the DEA Report of Drug Property Form. While the amounts "seized" correlate to the amounts in the Sheriff Deputy's report, the amount "submitted" to the DEA (from which the testing took place) were revised to indicate significantly different amounts; namely that Exhibit 1B1 amounted to 70.9 grams and Exhibit 1B2 amounted to 274.9 grams. It was this "seized" amount that was submitted by the government for testing. If there was any ambiguity about which drugs were actually tested by the government, it was incumbent upon the defense to seek clarification.[6] When

---

[6] The government points out that the defendant stipulated to the fact that government's Exhibit 19 (drugs found in the engine compartment) had been tested by the DEA, but that no similar

11

the government responded to the defense's request for production of the drugs that the government had tested, it fully complied with that request. The defense's argument that somehow the government acted improperly, leading to the denial of the defendant's ability to prepare for trial, is without basis.

More fundamentally, even if it was true that the defense did not have the opportunity to test the small amount of drugs seized from White's waistband, that fact would not entitle him to a new trial. The government did *not* argue – either explicitly or implicitly – that the drugs found in White's waistband were similar to or from the same batch as the drugs found in the engine compartment. The government's theory of the case essentially ignored the fact that White was found with a small amount of methamphetamine (suitable for personal use) on his person. The chemical composition of the drugs in White's waistband was not relevant to the government's case and could not have undermined the jury's determination of the critical issue – whether the government demonstrated with proof beyond a reasonable doubt that White possessed with intent to distribute the drugs found in the engine compartment.

Moreover, the defense had the opportunity to and did argue at trial that the government had failed to show any link between the drugs found on White and the drugs found in the engine compartment. Mot. at 5. As the government did not rebut or address this argument, we can assume that the jury accepted the defense's assertions. And it convicted White of possession with intent to distribute. If the defense had been able to rely on additional evidence in support of this argument (*assuming* that the defendant's expert would have been able to find significant chemical differences between the drugs found on White and the drugs from the engine compartment),[7] it would have made no difference. The "evidence" White believes that he could have presented to the jury about chemical difference between the drugs would not "create a situation where the evidence preponderates sufficiently heavily against the verdict" to convince me that a serious

---

stipulation was agreed to with respect to Exhibit 29 (the drugs found in White's waistband). *See* Docket No. 99, ¶ 2.

[7] The defense admits that even if the un-conducted testing could have shown dissimilarities between the drugs found in White's waistband and in his engine compartment, that evidence itself would not be "conclusive proof" that the drugs were not from the same batch or otherwise related. Mot. at 5, fn.2.

12

miscarriage of justice may have occurred. *See United States v. Kellington*, 217 F.3d at 1097.

## CONCLUSION

Defendant's motions for judgment of acquittal and for a new trial are DENIED.

**IT IS SO ORDERED**.

Dated: March 3, 2015



WILLIAM H. ORRICK
United States District Judge

13